IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>VINCENT JAMES FOSTER,<br><br>　　　　　　Defendant. | 4:24CR3025<br><br><br>MEMORANDUM AND ORDER |

　　　　This matter is before the Court on Defendant's Objection to the Magistrate Judge's Findings and Recommendation, which recommended that Defendant's Motion to Suppress be denied. (Filing No. 49.) For the reasons explained below, Defendant's Objection will be overruled.

## BACKGROUND

　　　　This case arises out an investigation pertaining to alleged drug activity. On April 5, 2023, Investigator Christopher Eirich ("Investigator Eirich") of the Lincoln Police Department ("LPD") arranged a controlled buy of cocaine between a confidential informant ("CI") and a drug dealer. (Filing No. 41-1.) The dealer told the CI she first needed to pick up the cocaine from her source, so investigators followed the dealer's girlfriend to the source's house. (Filing No. 41-1.) When she arrived, she texted the CI that the source's "plug" was on the way. (Filing No. 41-1.) Defendant arrived at the house a short time after in a black Mercedes and then parked at the house. (Filing No. 41-1.) The CI received a text from the dealer that "homie just pulled up, I'll have to get back to the house and weigh your's out still." A man left the source's house, got into the black Mercedes with Defendant, and then went back inside the house. (Filing No. 41-1.) Defendant left, and the dealer left in a separate vehicle. (Filing No. 41-1.) The girlfriend/dealer subsequently met with the CI and sold the CI cocaine. (Filing No. 41-1; Filing No. 47.)

　　　　Later than evening, Investigator Eirich observed the Mercedes parked at Defendant's house. Another Mercedes registered to Defendant was also parked at the house. (Filing No. 41-1; Filing No.

47.) Investigator Eirich saw Defendant leave the house and drive to a Burger King parking lot. (Filing No. 41-1.) There, Investigator Eirich watched a man get into Defendant's vehicle and then leave several minutes later in his own vehicle. (Filing No. 41-1.) Officers initiated a traffic stop of the man, who told them that he had met with a friend at Burger King to purchase marijuana but had not bought anything. (Filing No. 41-1.) Then, the man shoved a baggie of cocaine in his mouth. (Filing No. 41-1.) Investigators obtained a search warrant for the man's phone. Text messages between the man and Defendant's phone number indicated Defendant had sold the man cocaine and marijuana between February and April 2023. (Filing No. 41-1.) Investigator Eirich testified that messages on the man's phone indicated Defendant had agreed to sell the man cocaine on April 5, 2023. (Filing No. 47.)

Over the next few months, investigators continued surveilling Defendant's house. On August 10, 2023, Investigator Eirich saw a car pull into Defendant's driveway. (Filing No. 47.) The driver of the vehicle was identified as an individual known for engaging in drug activity. (Filing No. 47.) The driver sat in the driveway for a few minutes, then left Defendant's house, drove to an ATM, withdrew cash, and parked in a location that Investigator Eirich had seen Defendant previously conduct drug deals. (Filing No. 47.) The driver also had an active broadcast for an unrelated crime of violence. (Filing No. 47.) Investigator Eirich and another investigator decided to make contract with the driver due to his active broadcast. (Filing No. 47.) When they pulled in behind the driver's vehicle, the driver rammed his vehicle into their unmarked police vehicle and then rammed it into the side of a building. (Filing No. 47.) Investigator Eirich and another officer were able to break out the window of the driver's vehicle and place him under arrest. (Filing No. 47.)

Investigator Eirich saw Defendant's Mercedes drive by the scene of the traffic stop with Defendant in the passenger seat. (Filing No. 47.) The Mercedes turned into a gas station across the street and parked. (Filing No. 47.) No one exited the vehicle. (Filing No. 47.) After Investigator Eirich saw the Mercedes, he sent a broadcast over the radio to his other investigators. (Filing No. 47.) The broadcast instructed officers to stop Defendant. (Filing No. 47.) Investigator Eirich's broadcast indicated he believed Defendant intended to meet the driver who had been arrested to conduct a drug deal and investigators needed to stop him so Defendant could not return to his house because Investigator Eirich was planning to obtain a search warrant for the house. (Filing No. 47.) Defendant's house was only two to five blocks away from this scene. (Filing No. 47.) Investigator Eirich's broadcast was relayed to Sergeant Muff ("Sgt. Muff"), who was in uniform driving a marked police cruiser.

2

(Filing No. 47.) It is LPD policy for uniformed officers to conduct traffic stops. Sgt. Muff followed the Mercedes after it left the gas station and initiated a traffic stop. (Filing No. 47.)

Sgt. Muff and the investigator in the car following Sgt. Muff's cruiser, Investigator Samuel Wiarda ("Investigator Wiarda"), contacted Defendant. Investigator Wiarda testified he noticed the smell of marijuana. (Filing No. 47.) Officers searched the vehicle and found, among other items, marijuana and suboxone sublingual films. Defendant was placed under arrest. (Filing No. 47.) Investigator Eirich obtained a search warrant for Defendant's house. The warrant affidavit generally set out the facts cited above. (Filing No. 41-1.) Investigators executed the warrant on August 11, 2023, seizing, among other items, controlled substances, money, guns, and drug paraphernalia. (Filing No. 41-1.)

On February 21, 2024, Defendant was charged in a two-count indictment with conspiracy and possession with intent to distribute controlled substances in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) and (b)(1). (Filing No. 1.) Defendant later filed a motion to seeking to suppress evidence obtained as the result of the stop and subsequent warrant to search his residence. (Filing No. 29.) In his motion, Defendant argued that officers lacked articulable reasonable suspicion or probable cause to stop the car in which he was a passenger. Defendant further argued that the evidence obtained from the warrant to search his home should be suppressed as "fruit" of the allegedly unconstitutional stop because the warrant affidavit recounted information from the traffic stop.

The Magistrate Judge held an evidentiary hearing on Defendant's motion on January 16, 2025. (Filing No. 42.) The Magistrate Judge issued a Findings and Recommendation (Filing No. 48) on February 26, 2025, recommending that Defendant's Motion to Suppress (Filing No. 29) be denied. The Magistrate Judge concluded that under the totality of the circumstances, there was reasonable suspicion to stop the vehicle. Given this conclusion, the Magistrate Judge further found that the evidence obtained based on the residential search warrant was not "fruit" of an unlawful traffic stop. The Findings and Recommendation warned that failing to object to the order, as provided in the local rules of this Court, may be held to be a waiver of any right to appeal the Court's adoption of the recommendation. (Filing No. 48.)

## DISCUSSION

Under 28 U.S.C. § 636(b)(1), the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28

3

U.S.C. § 636(b)(1). Failing to object "eliminates not only the need for de novo review, but *any* review by the district court." Leonard v. Dorsey & Whitney LLP, 553 F.3d 609, 619-20 (8th Cir. 2009) (discussing Thomas v. Arn, 474 U.S. 140, 149-50 (1985)); *see also* Fed. R. Crim. P. 59 (a),(b)(2) (stating that failing to timely object waives the right to review of both nondispositive and dispositive matters); NECrimR 59.2(a), (e).

Defendant filed an Objection (Filing No. 49) to the Findings and Recommendation on March 26, 2025, which was 14 days past the deadline for filing objections. This Court's local rules require that objections to magistrate judge's orders be filed within 14 days of being served with the findings and recommendation. *See* NECrimR 59.2. The local rules further provide that failure to object to a finding of fact in a magistrate judge's recommendation may be construed as a waiver of the right to object from the district judge's order adopting the recommendation of the finding of fact. *See* NECrimR 59.2.

Despite the untimely filing, the Court has considered Defendant's Objection in its entirety and conducted a *de novo* review of the record.[1] Defendant's objections are two-fold: First, Defendant argues law enforcement did not have reasonable suspicion for the traffic stop because a traffic violation did not occur.[2] Defendant contends law enforcement improperly relied on inferences from prior investigations to justify the stop, rather than direct observations of illegal activity, and that officers did not have specific details linking him to ongoing criminal activity. Second, Defendant argues that because the stop was unlawful, the evidence obtained from the warrant to search his home should be suppressed as "fruit" of the unconstitutional traffic stop. The Court finds these arguments unpersuasive.

"The Fourth Amendment permits investigative traffic stops when law enforcement has reasonable suspicion of criminal activity." United States v. Tamayo–Baez, 820 F.3d 308, 312 (8th Cir. 2016). "This includes the right to briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." United States v. Collins, 883 F.3d 1029, 1032 (8th Cir. 2018) (quotation omitted). "Reasonable suspicion exists when an officer is aware of

---

[1] Defendant did not seek leave to file his Objection out of time. The Court has reviewed the Objection in this case but reminds counsel that it will not consider untimely filings in the future without a proper motion requesting such relief and then the Court granting the motion. Counsel is also reminded that if more time than what Court rules allow is needed to file an objection, counsel may file a motion requesting an extension of time before the expiration of the deadline.

[2] The government does not argue that Defendant was stopped due to a traffic violation, but rather he was stopped based on a reasonable suspicion of criminal activity. (Filing No. 51.)

particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (internal quotation marks omitted). Though an "inchoate hunch" does not equate to reasonable suspicion, "the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *Tamayo–Baez*, 820 F.3d at 312. Courts consider the totality of the circumstances in evaluating whether law enforcement had a reasonable suspicion of criminal activity. *Id*.

"The collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008). *See United States v. Jacobsen*, 391 F.3d 904, 907 (8th Cir. 2004) ("The patrol officer himself need not know the specific facts that caused the stop . . . the officer need only rely upon an order that is founded on reasonable suspicion.").

The totality of the circumstances supports the conclusion that officers had reasonable suspicion to stop Defendant. Defendant had been under investigation for suspected drug activity for several months before the traffic stop. At one point, officers observed Defendant at the scene of a controlled buy under circumstances supporting an inference that Defendant was the dealer's source for the narcotics. That same evening, Defendant was observed in his vehicle with a man who was immediately thereafter stopped by officers, who told them was meeting with a friend to purchase marijuana and then suddenly put a baggie of cocaine in his mouth. Messages on the man's phone indicated Defendant had agreed to sell the man cocaine that night. A few months later—as the investigation continued—an individual known for drug activity was observed at Defendant's home. The individual left Defendant's house, drove to an ATM, withdrew cash, and parked in a location that Investigator Eirich had seen Defendant previously conduct drug deals. Investigator Eirich and another investigator initiated a traffic stop and arrested the driver. Defendant was observed slowly driving by the scene of the arrest and parking at a gas station across the street. Officers had sufficient reasonable suspicion of criminal activity to perform the investigatory stop.

Although Investigator Eirich did not stop the Mercedes himself, he broadcasted it was likely that Defendant had intended to meet the driver who was arrested in the traffic stop to conduct a drug deal and investigators needed to stop him so Defendant did not return to his house and destroy evidence. It is LPD policy for uniformed officers to conduct traffic stops. The collective knowledge,

which was imputed to Sgt. Muff through the broadcast communication, was sufficient to provide reasonable suspicion for Sgt. Muff's initiation of the traffic stop.

Because the Court has found that the traffic stop was valid, Defendant's second argument that the evidence obtained from the warrant to search his home should be suppressed as "fruit" of the unconstitutional traffic stop is rejected.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Objection ([Filing No. 49](#)) is overruled.

2. The Magistrate Judge's Findings and Recommendation ([Filing No. 48](#)) is accepted in its entirety.

3. Defendant's Motion to Suppress ([Filing No. 29](#)) is denied.

4. This matter will be set for trial by separate order.

Dated this 2nd day of May, 2025.

BY THE COURT:

_Susan M Bazis_
Susan M. Bazis
United States District Judge